UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO: 88-371** |
| **LOUIS CASTRO** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Defendant Louis Castro's Second Motion for Compassionate Release (Doc. 236). For the following reasons, the Motion is GRANTED.

## BACKGROUND

Defendant Louis Castro has served 32 years of a life sentence on six federal drug and firearm charges related to a conspiracy to import and distribute a large quantity of cocaine in 1988. Defendant now asks this Court for compassionate release pursuant to 18 U.S.C. § 3582(c) because of his age, health, and the COVID-19 outbreak at FCI Jesup where he is housed. The Government opposes.

## LAW AND ANALYSIS

As of November 10, 2020, the Bureau of Prisons ("BOP") reports that, at FCI Jesup, four inmates are currently positive for COVID-19, 238 have recovered, and one has died. Defendant alleges that if he contracts COVID-19,

he is at high risk for complications because of his advanced age and pre-existing health conditions. Specifically, Defendant is 81 years old and suffers from hypothyroidism, hypercholesterolemia, hyperlipidemia, hypertension, and obesity. He suffered a stroke in 2017 and has been diagnosed with atherosclerotic cardiovascular disease. He argues, therefore, that extraordinary and compelling reasons exist to modify his sentence.

"The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582."[1] Section 3582(c), as amended by the First Step Act, states in relevant part that:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other

---

[1] United States v. Garcia, 606 F.3d 209, 212 (5th Cir. 2010).

>> person or the community, as provided under section 3142(g);

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

At the outset, the Government disputes whether Defendant has exhausted his administrative remedies. Defendant contends that he sent a request for compassionate release to the warden of FCI Jesup on August 28, 2020. The Government argues that, while the USPS tracking information reveals that the request was received by FCI Jesup on August 31, 2020, it was not processed or presented to Castro's case manager until October 25, 2020 and therefore the 30-day waiting period did not begin to run until that date. Section 3582(c) clearly states, however, that a defendant need only wait for "the lapse of 30 days from the *receipt* of such a request by the warden of the defendant's facility." There is no requirement that the request has been processed or considered for the clock to start running. Accordingly, 30 days have elapsed since the receipt of Defendant's request for compassionate release, and his Motion is therefore properly before this Court. This Court will consider its merits.

The Sentencing Commission's policy statement regarding compassionate release sets forth what facts are considered "extraordinary and compelling." "Although historically sentence reductions could be ordered only upon a motion by the Director of the Bureau of Prisons, the First Step Act of 2018 amended the statute to additionally allow prisoners to petition the Court."[2] The Sentencing Commission's policy statements have not, however, been amended since the enactment of the First Step Act, "and consequently, a portion of the

---

[2] United States v. Perdigao, No. CR 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020).

policy statement now squarely contradicts 18 U.S.C. § 3582(c)(1)(A) as amended."[3] In recognizing this discrepancy,

> [m]any courts have concluded that this discrepancy means that the Sentencing Commission does not have a policy position applicable to motions for compassionate release filed by defendants pursuant to the First Step Act. Accordingly, other district courts have found that they have discretion to determine what constitutes an "extraordinary and compelling reason[ ]" on a case by case basis, and reliance on the policy statement may be helpful, but not dispositive.[4]

The policy statement states that, provided a defendant is not a danger to the community, extraordinary and compelling reasons exist under the following circumstances:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental

---

[3] *Id.*
[4] *Id.*

    health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).[5]

This Court finds that, in light of the heightened medical risk the COVID-19 pandemic poses to Castro in particular, there are extraordinary and compelling reasons to order his immediate release from FCI Jesup.[6] Defendant is 81 years old. His blood pressure is often well within the range for stage 2 hypertension even with medication. He suffered a stroke in 2017 that was likely caused by his high blood pressure. As a result of his stroke and high cholesterol, Defendant has been diagnosed with atherosclerotic cardiovascular disease, which puts him at risk for another stroke or other severe heart conditions, such as coronary artery disease. Defendant has continued to experience complications from his stroke such as dizziness, weakness, neuropathy, and left side paresthesia. Defendant has a body mass index of 29.8, putting him at the threshold for clinical obesity.

---

[5] U.S.S.G. 1B1.13.
[6] *See* United States v. Zukerman, No. 16 CR. 194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (and cases cited therein); United States v. Burrill, No. 17-CR-00491-RS-1, 2020 WL 1846788, at *3 (N.D. Cal. Apr. 10, 2020) (and cases cited therein).

The Centers for Disease Control ("CDC") has identified conditions that put individuals at a higher risk for severe illness if infected with COVID-19, as well as conditions that *might* put individuals at a higher risk.[7] In the first category, it lists serious heart conditions and obesity; in the second, it has identified hypertension and cerebrovascular disease, such as stroke.[8] The CDC has also explained that while persons over 85 years of age are at greatest risk of severe illness, the risk of severe illness, hospitalization, and death increases with age.[9] "In fact, 8 out of 10 COVID-19-related deaths reported in the United States have been among adults aged 65 years and older."[10] It also notes that "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19."[11] In addition, the conditions of incarceration, in which inmates sleep, eat, and shower in close quarters, make controlling the spread of COVID-19 extremely difficult. Defendant is therefore unable "to provide self-care within the environment of a correctional facility" to avoid contracting COVID-19, and an infection puts him at risk for severe illness.[12]

The Court further finds that the § 3553(a) sentencing factors support Defendant's release. While Defendant's offenses are undeniably serious, there were no allegations of violence or threats of violence. In addition, given Defendant's advanced age and medical condition, his risk of recidivism is

---

[7] People with Certain Medical Conditions, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 10, 2020).

[8] *Id.*

[9] Older Adults, Ctrs. for Disease Control and Prevention https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Nov. 10, 2020).

[10] *Id.*

[11] People with Certain Medical Conditions, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 10, 2020).

[12] *See* U.S.S.G. 1B1.13.

minimal. Accordingly, the Court finds that he is not a danger to the community. Further, he has served more than 30 years in prison for his crimes. Taking into account his medical condition and need for medical care, a modified sentence of time served sufficiently reflects the seriousness of his offenses and promotes respect for the law.

Accordingly;

**IT IS ORDERED** that Defendant's Motion for Compassionate Release is **GRANTED**.

**IT IS FURTHER ORDERED** that Castro's sentence as to all counts is **MODIFIED** and **REDUCED** to time served pursuant to 18 U.S.C. § 3582(c). The remainder of Castro's term of imprisonment shall be served on supervised release.

**IT IS FURTHER ORDERED** that the Warden of FCI Jesup shall immediately release Louis Castro from custody.

**IT IS FURTHER ORDERED** that within 72 hours of release from the custody of the United States Bureau of Prisons, the defendant shall contact the probation office in the district to which the defendant is released. While on supervised release, the defendant shall not commit any federal, state, or local crimes, and he shall be prohibited from possessing a firearm, ammunition, destructive device, or any other dangerous weapon. The defendant shall not possess a controlled substance, shall cooperate in the collection of DNA, and he shall comply with all other standard conditions of probation.

**IT IS FURTHER ORDERED** that upon his release Castro shall self-quarantine at home for a period of 14 days.

New Orleans, Louisiana, on this 17th day of November, 2020.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**